SECURITY SAVINGS BANK OF LITTLE ROCK, IOWA, Appellant, v. RAKER, Administrator, et al, Respondents.

(208 N. W. 786.)

(File No. 5981.   Opinion filed May 5, 1926.)

1.    **Bills and Notes—Fraudulent Representations—Defendant Signing Brother's Note Held a Joint Maker, Liable Unless Induced to Sign by Fraud or Misrepresentation.**

Defendant signing negotiable promissory note after his brother's signature to enable latter to obtain loan is a joint maker, liable on note unless induced to sign by fraud or misrepresentation.

2. **Bills and Notes—Evidence Held Insufficient to Show Any False Representation Inducing Defendant to Sign Note as Joint Maker.**

In suit on note, evidence held insufficient to show any false representation that defendant would not be liable if brother, to whom money was loaned, removed to farm on certain date.

3. **Bills and Notes—Representation that Defendant Signing Note as Joint Maker Would Be Free After Date on Which It Was Payable Held Not a False Representation Relieving Defendant from Liability.**

In suit on note, representation that defendant would be free after date on which note was made payable held not to constitute a false representation, relieving defendant from liability on note as joint maker.

Note.—See, Headnote (1), American Key-Numbered Digest, Bills and notes, Key-No. 120, 8 C. J. Sec. 96 (Anno.); (2) Bills and notes, Key-No. 520, 8 C. J. Sec. 1361; (3) Bills and notes, Key-No. 103(1), 8 C. J. Sec. 1046.

Appeal from Circuit Court, Brookings County; Hon. W. W. Knight, Judge.

Action by the Security Savings Bank of Little Rock, Iowa, against C. A. Raker, as administrator of the estate of W. Timmer, deceased, and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded, with directions to enter judgment for plaintiff.

*Cheever & Cheever* and *P. H. Collins,* all of Brookings, for Appellant.

*Hall & Purdy,* of Brookings, for Respondents.

MORIARTY, C. The appellant bank brought this action upon a promissory note signed by the respondent E. Timmer and by his brother, W. Timmer, now deceased.

The complaint is in the usual form. The answer admits the signing of a note payable to appellant bank, but alleges that the respondent received no consideration for signing the same, and that he signed as a surety for his brother, W. Timmer, upon a special agreement, entered into at the time of signing, to the effect that he signed said note merely as a surety for his said brother, removing to a certain farm in Brookings county, S. D., and that if said W. Timmer did remove to said farm on or before March 15, 1920, that the respondent would be thereby and there-

upon absolutely relieved from any obligation upon said note. And the answer further alleges that this agreement was made between respondent and one Ben Abben, who was then the president and managing officer of the appellant bank, and that said bank took said note with full knowledge and notice of such agreement. And said answer further alleges that if the note sued upon is an absolute and unqualified promise to pay, and does not contain suitable language to show said special agreement, then the signature of respondent thereto was secured by fraud and misrepresentation of the plaintiff and its said president. And the answer further alleges that respondent is a foreigner and unable to read the English language, and that he relied upon the statements made by appellant's said president, and would not have signed the note except for such representations.

The case was tried to a jury. On the trial appellant produced the note described in the complaint, and proved respondent's signature thereto and its nonpayment, thus establishing its affirmative case.

[1] The respondent E. Timmer admitted that he went to appellant's bank in Little Rock, Iowa, on the day that the note sued upon was executed. He testified that he went there with his brother, W. Timmer; that he wanted to help his brother get onto a better farm, and near to respondent's own farm in Brookings county, S. D., to which respondent was expecting to go. He and the brother and Mr. Abben conversed in Holland Dutch, with which all of them were thoroughly familiar. He heard the brother, W. H. Timmer, arrange with Abben to borrow $2,000 from the bank. He heard his brother tell Abben that he would need that amount to settle up his debts where he had been farming and enable him to move. Respondent saw his brother sign the note. He was told that the brother could not get the loan unless respondent signed the note also. He signed after the brother and saw the brother get the money. The note so signed was a promissory note, regular in form, payable to the appellant bank on March 15, 1920. It contained no special conditions or exceptions. Under this state of facts the respondent was clearly a joint maker of a negotiable promissory note. And unless he was induced to sign the same by fraud or misrepresentation, he is liable thereon.

[2]   As to respondent's defense that he was induced by fraud and misrepresentation to sign the note: He had lived in this country 23 years. He had owned at least two different farms. He had previously signed promissory notes. He transacted his own business of buying and selling. During a part of the trial he was examined and testified in English. On the same day that he signed the note in controversy he took a note for $600 from his brother William. This note was prepared for signature by Mr. Abben, and was upon the same blank form as was used for the note in controversy. It was signed in respondent's presence by his brother, and respondent evidently understood its nature quite clearly. When questioned during the trial as to the note in controversy, he admitted that he could read the names, the dates, and the amount, but said he could not read the fine print.

[3]   The only testimony in any way tending to support respondent's defense that his signature was induced by false representation is as follows: Respondent testified that, when Abben and William Timmer were talking relative to William's getting $2,000 from the bank, Abben asked of respondent if he would stand good for the $2,000, and respondent said that he would not. Then the record shows the following questions addressed to respondent through the interpreter, and the answers thereto given in the language of the interpreter, speaking of respondent in the third person.

"Q.   After you refused to sign the $2,000 note with your brother, what was then said?   A.   He would stand good until William's stuff would be on Mr. Abben's farm.

"Q.   What was said about that—as to when he was to be on the farm?   A.   15th of March, 1920.

"Q.   Well; what was said by Mr. Abben, and what was said by you, relative to your standing good for your brother being on the farm by the 15th of March, 1920?   A.   He said he would be free, would be off, would be free after March 15, 1920.

"Q.   That is this defendant would be free?   A.   Yes.

"Q.   Provided your brother was on the farm by the 15th of March, 1920; is that the way I understand you?   A.   He don't know. He don't have anything to do with it."

On his cross-examination the respondent testified as follows:

"Q. Was there any talk between you and Ben Abben that he was to write anything in this note except the amount of it, put in the date, and to give the due date thereof? A. I could not say.

"Q. There wasn't any other instrument or paper drawn that day, an agreement that Will would move up to South Dakota on one of Mr. Abben's farms, besides this note, was there? A. He says he don't know."

From this it will be seen that the only evidence of any kind that in any way can be construed as a representation must be found in the words:

"He said he would be free, would be off, would be free after March 15, 1920."

The record does not show who said that, but, assuming that Mr. Abben did, they do not constitute a false representation. Respondent was helping his brother to borrow $2,000 from the bank. Respondent said he would stand good for it until March 15, 1920. The note was made payable on that date. Mr. Abben testified that they considered that when William Timmer got up to South Dakota with his personal property he could arrange with a bank there to carry the loan. Respondent denies that there was any such conversation, but he does not say how he was to be free after March 15, 1920. The evidence is insufficient to show any false representations to induce respondent to sign the note.

At the time respondent rested on his affirmative defense, appellant moved for the direction of a verdict in its favor, on the ground that there was no evidence sufficient to constitute a defense to the cause of action affirmatively established by plaintiff. This motion was renewed at the close of all the evidence.

After the return of the verdict the appellant moved for judgment notwithstanding the verdict, on the same grounds stated in its motion for a directed verdict. Each of these motions was, in turn, denied, and judgment entered in favor of respondent.

The court erred in denying these motions. The judgment and order appealed from are reversed, and the case is remanded, with directions to enter judgment for appellant for the amount of the note and interest.

MISER, Circuit Judge, sitting in lieu of SHERWOOD, J.
POLLEY, J., not sitting.